**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TIFFANY TOWNSEND, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-04-1162-F |
| ) | |
| BG-MERIDIAN, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter comes before the Court upon the motion (doc. no. 50) of the defendants, BG-Meridian, Inc., Hal Smith Restaurant Group, Inc., BG-Norman, Inc., BG-MWC,Inc., BG-OKC North, L.L.C., and BG-OKC South, L.L.C., for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff, Tiffany Townsend, has responded to the motion, and the defendant has replied. After careful consideration of the parties' submissions, the record, and all relevant arguments and authorities, the Court makes its determination.

The defendants have asserted, and Tiffany Townsend has failed to produce competent evidence to controvert, the following material facts.

1. In August 2003, Ms. Townsend was hired to work the "front of the house" at the Boomerang Grill located at 412 South Meridian in Oklahoma City.

2. Her "front of the house" duties all involved customer service.

3. When working solely or primarily as a waitress, Ms. Townsend received an hourly wage of $2.13 plus tips.

4. When working as a waitress, Ms. Townsend was sometimes required to perform such additional duties as working the cash register and taking phone orders.

5. Ms. Townsend was expected to pay for open checks at the tables upon which she waited and for cash shortages when she worked the cash register.

6. During her employment at the Boomerang Grill, Ms. Townsend was repeatedly warned about inappropriate behavior.

Ms. Townsend points to evidence in the record to support the following additional material facts.

7. Ms. Townsend was terminated from her employment with the Boomerang Grill on March 4, 2004.

8. At the time of her termination, Ms. Townsend held the minimum qualifications required for her job position.

9. After her termination, Ms. Townsend's job continued to be performed by other employees.

10. Prior to her termination, Ms. Townsend complained to the Boomerang Grill's Assistant Manager, Michael Wilcox, about inappropriate touching and sexual comments by two cooks named Julio and Pedro.

11. A log of notes maintained by the managers of the Boomerang Grill reflects instances where cooks, including Julio, inappropriately touched and made "lewd comments" to the female wait staff, including Ms. Townsend.

12. When she reported the cooks' harassment to Mr. Wilcox, he would instruct the cooks to stop. They would thereafter fail to prepare her customers' food and refuse to give her food items saying, "you stupid white bitch, you need to get it yourself," or "you dumb whore, you need to get it yourself."

13. Pedro and Julio knew that Ms. Townsend complained about them. Neither Mr. Wilcox, nor any other managers instructed Julio or Pedro to refrain from retaliating against Ms. Townsend.

14. On March 1, 2004, Ms. Townsend told General Manager Deryck Courange that she would contact Area Supervisor Shelly Pitt if the cooks' harassment did not stop.

15. After Mr. Courange began buckling down on the harassment, Ms. Townsend informed him that the cooks were withholding her orders, and refusing to give her items even after being instructed to do so by Mr. Wilcox and Assistant Manager Amy Bass.

16. On March 4, 2004, when Ms. Townsend arrived at work, Pedro "slapped her on the butt," and later shouted that if she didn't like her job she should quit and not jeopardize his job.

17. When later that same day Ms. Townsend complained to Mr. Wilcox about Pedro's behavior, Mr. Wilcox replied, "you need to quit coming to me about all this." Ms. Townsend threatened to call Area Supervisor Shelly Pitt because he "obviously" was not going to do anything about it. Mr. Wilcox warned her not to threaten him and then dismissed her and told her to get her things and leave.

18. The manager's log for the day included the following: "Tiffany is terminated. Bad attitude and wanting to discuss [front of the house/back of the house] very loudly. With amount of business tonight, I didn't have time so sent her home for good."

19. Hostesses at the Boomerang Grill made $2.13 per hour and were to receive a portion of the wait staff's tip pool. At times when working as a hostess, Ms. Townsend was not tipped out by the wait staff and earned less than the minimum wage.

20. The only position paid out of the tip pool was the hostess position.

21. When she was hired, Ms. Townsend was required to sign a Cashier Policy statement declaring she was "fully responsible" for counting her register at the beginning of her shift, that no one else was allowed access to her register, and that she was responsible for reimbursing any cash shortages.

22. In fact, she did not have sole responsibility for the register as the managers would also use the registers and they counted the registers at the end of each shift.

23. When she was hired, Ms. Townsend was required to sign a "Runner" Policy declaring that she was fully responsible for her assigned station and all tables and checks for her shift, and that she was responsible for paying any open checks in her station.

24. Waitresses were not solely responsible for ensuring customers paid their bills. Cashiers and managers shared responsibility for ensuring that there were no open checks.

25. On one occasion, customers' orders were not prepared because of a system malfunction. The manager on duty provided complimentary meals for the customers but made all the wait staff pay for the meals. When Ms. Townsend objected, she was told she could leave. Ms. Townsend also was required to cover a number of additional open checks and register shortages.

26. On one occasion, Ms. Townsend was required to work off the clock 30 minutes a day for two days scrubbing walls in order to avoid being punished for being tardy.

Summary Judgment Standard

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed. R. Civ. P. The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553-54 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510-11 (1986). In determining whether a genuine issue of material fact exists, the court must review the record in the light most favorable to the party opposing summary judgment. National Aviation Underwriters, Inc. v. Altus Flying service, Inc., 555 F.2d 778, 784 (10th Cir. 1977).

Nature of the Case

After being terminated from her employment at the Boomerang Grill on March 4, 2004, Ms. Townsend brought this action alleging that the defendants, as participants in an integrated enterprise, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000, et seq., by subjecting her to a sexually hostile work environment and by retaliating against her when she made complaints concerning that harassment. She further alleges that the defendants' tip policy and paycheck deduction policy violate certain provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and Oklahoma's wage statutes and regulations including 40 Okla. Stat. §§ 165.1-165.5 and O.A.C. § 380.30-1-7.

The defendants assert that they are entitled to summary judgement in their favor on Ms. Townsend's Title VII retaliation claim as well as her claims arising under the FLSA and Oklahoma's state wage laws because she was fired for legitimate, non-discriminatory reasons, and because she never earned less than minimum wage while employed at the Boomerang Grill. In their reply to Ms. Townsend's brief in opposition to their motion for summary judgment, the defendants assert that they are

also entitled to summary judgment finding that they cannot be considered an integrated enterprise, or single employer, for purposes of Ms. Townsend's suit. This issue, however, was not raised by their motion wherein they merely recited, without factual support, that Ms. Townsend "was an employee only of BG-Meridian, Inc., and was not employed by any other Defendant entity." (Defendants' Motion for Partial Summary Judgment, p. 2). The Court declines to consider new grounds for summary judgment raised for the first time in the defendants' reply brief. Such issues are not properly before the Court where, as here, the defendants could and should have presented them previously.

I.  Hostile Work Environment Sexual Harassment and Retaliation

As Ms. Townsend points out, the defendants do not in any meaningful way address her claim for hostile work environment sexual harassment. Therefore, to the extent their motion seeks summary judgment on that claim, it must be denied.

Ms. Townsend's retaliation claim arises out of the conduct of both her co-workers and her supervisors. She contends that she lodged complaints with her supervisors regarding what she perceived to be sexual harassment from the Boomerang Grill's cooks. In particular, she complained of lewd comments and unwanted touching by two "back of the house" employees, Pedro and Julio. While her complaints resulted in the temporary abatement of the sexual harassment, Ms. Townsend claims that in retaliation for those complaints, the cooks began treating her with extreme rudeness and hostility and interfered with her job performance by refusing to provide her with food items and withholding her customers' orders. She maintains that when she complained to Assistant Manager Michael Wilcox about the retaliation, he retaliated against her by terminating her employment.

The defendants assert that they are entitled to summary judgment on this claim because Ms. Townsend cannot state a prima facie case of retaliation. To survive the defendants' motion for summary judgment, Ms. Townsend must show (1) that she

engaged in protected conduct; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the protected conduct and the adverse employment action. Wells v. Colorado Dept. Of Transp., 325 F.3d 1205, 1212 (10th Cir. 2003). She may establish her case in one of two ways. The first and most common way of establishing a case of retaliation is via the "indirect method" which permits a plaintiff to employ the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McCue v. State of Kan., Dept. Of Human Resources, 165 F.3d 784, 789 (10th Cir. 1999) (applying the burden-shifting analysis to plaintiff's retaliation claim). Under the McDonnell Douglas framework, once the plaintiff produces evidence to support the elements of her prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. The plaintiff then has the burden to demonstrate that the defendant's proffered reasons are merely pretextual, or unworthy of belief. If the plaintiff proffers such evidence, the motion for summary judgment must be denied. Id.

Ms. Townsend may also establish her prima facie case by the second, "direct," method, thereby rendering the McDonnell Douglas framework inapplicable. See Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 550 (10th Cir. 1999) cert. denied 528 U.S. 813 (1999); Greene v. Safeway Stores, Inc., 98 F.3d 554, 557-58, 560 (10th Cir. 1996). Here Ms. Townsend seeks to establish her prima facie case directly. "To prevail via this direct method, a plaintiff must introduce direct or circumstantial evidence that the alleged retaliatory motive 'actually relate[s] to the question of discrimination in the particular employment decision, not to the mere existence of other, potentially unrelated forms of discrimination in the workplace.'" Medlock, 164 F.3d at 550 (quoting Thomas v. National Football League Players Ass'n, 131 F.3d 198, 204 (D.C. Cir. 1997).

Ms. Townsend contends that, viewed in the light most favorable to her, her supervisor's conduct may be perceived as directly reflecting a retaliatory attitude. See Thomas v. Denny's, Inc., 111 F.3d 1506, 1512 (10th Cir. 1997) cert. denied 522 U.S. 1028 (1997). Specifically, she points to evidence that her supervisor terminated her as a direct result of her complaints regarding what she believed to be sexual harassment and retaliatory harassment by the cooks. Once a plaintiff presents evidence that retaliation played a direct motivating part in the defendant's decision to discharge him, it becomes the defendant's burden to prove by a preponderance of the evidence that it "would have made the same decision" notwithstanding its retaliatory motive. Id. at 1511.

The defendants do not dispute that Ms. Townsend's complaints triggered her firing. See Defendants' Motion for Partial Summary Judgment, p. 16 ("At that point, **in front of customers**, Plaintiff told her manager to call his supervisor because 'obviously [he wasn't] going to do anything about [the kitchen staff's behavior].' At that point, the decision was made to terminate Plaintiff's employment.") (emphasis original, quoting Tiffany Townsend's deposition at p. 144). Rather, they argue first, that the complaints had nothing to do with sexual harassment and, therefore, did not constitute protected activity, and second, that even if the complaints were protected, Ms. Townsend's termination resulted not from the content of her complaints, but from the inappropriate and insubordinate manner in which they were expressed. In support of their assertion that the plaintiff's complaints were not protected, the defendants argue that the conduct complained of was not sexual in nature but was mere rudeness directed toward the entire wait staff. The record, however, when viewed in the light most favorable to the plaintiff, reveals an act of unwanted touching by Pedro and further suggests that the trigger of the cooks' rudeness was their awareness of Ms. Townsend's sexual harassment complaints. For example, Ms. Townsend testified in

her deposition that while Pedro was rude to all the waitresses, he was particularly rude to her and singled her out for such treatment as refusing her food items and failing to fill her customers' orders. She further testified that on the night of her termination, Pedro "just started yelling at me about how if I didn't like my job, I needed to quit, don't put his job in jeopardy." See Tiffany Townsend's deposition at pp. 142-143. It appears to be this arguably retaliatory conduct that formed the basis of Ms. Townsend's complaints to Michael Wilcox on the day of her termination. Complaints of retaliation for having complained of sexual harassment are, like the complaints of sexual harassment themselves, protected activity under Title VII. The defendants' contention that Ms. Townsend's complaints on March 4, 2004 could not constitute protected activity is unavailing.

The defendants next argue that the substance of Ms. Townsend's complaints was immaterial as it was the unprofessional and inappropriate manner in which she voiced those complaints that led to her termination. The defendants maintain that the insubordinate attitude displayed by the plaintiff was consistent with her past misconduct and that it provided a legitimate, nondiscriminatory basis for her firing. The Court cannot properly base summary judgment on such distinctions. In Medlock v. Ortho Biotech, Inc., the defendant employer fired the plaintiff approximately a month after he gave deposition testimony concerning his race discrimination claim against the employer. The termination was effected through correspondence stating: "As a result of issues raised in your deposition, effective immediately, you are suspended from all duties on behalf of the Company." 164 F.3d at 550. Although the employer insisted it was referring only to deposition revelations wholly unrelated to the discrimination claim, the Tenth Circuit Court of Appeals stated that: "Taken in the light most favorable to plaintiff, we must conclude the letters, coupled with the close temporal proximity between the plaintiff's deposition and firing, directly support the

jury's finding that the defendant terminated plaintiff in retaliation for his pursuit of his Title VII race discrimination claim." Id.

Having produced evidence from which a reasonable jury could determine that Michael Wilcox fired Ms. Townsend as a direct result of her complaints regarding what she perceived to be sexual harassment and retaliatory conduct by the Boomerang Grill's kitchen staff, it becomes the defendants' duty to prove by a preponderance of the evidence that Mr. Wilcox would have made the same decision notwithstanding his retaliatory motive. Medlock, 164 F.3d at 550. Whether the defendants can meet their burden is a question properly left to the jury in this case.

II.  Fair Labor Standards Act

A.  Utilization of a "tip credit"

Ms. Townsend alleges that the Boomerang Grill's method of compensating its wait staff violated the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201-219 (2000). Pursuant to the FLSA, an employer is permitted to pay a cash wage less than the minimum wage to employees who receive tips. 29 U.S.C. § 203(m). The FLSA permits the employer to apply a "tip credit," to make up the difference between the cash wage and the statutory minimum wage which at all times relevant to this action was $5.15 per hour. The employer is allowed to apply the tip credit only toward the wages of employees who qualify as "tipped employee[s]." Subsection 203(t) defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 per month in tips."

It is undisputed that Ms. Townsend earned in excess of $30.00 per month in tips when serving as a waitress at the Boomerang Grill. She complains, however, that the defendants applied a tip credit not only to the hours she worked as a waitress, but also to those portions of her waitress shift that she spent operating the cash register and

taking phone orders. She argues that cashiers and phone order receptionists are not tipped employees and offers as evidence the fact that the Boomerang Grill employs certain persons to act solely as cashiers and solely as phone order receptionists. It pays those employees $5.15 per hour.

The cases that have considered whether a given occupation falls within the definition of a tipped employee have focused on the level of customer interaction involved in that occupation. See Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294 (6th Cir. 1998); Myers v. The Copper Cellar Corporation, 192 F.3d 546 (6th Cir. 1999). Customer service positions in which the employee has more than de minimis interaction with customers have been found to be tipped occupations even where the employees are prohibited from accepting tips directly from customers. See Kilgore, 160 F.3d at 306 (finding restaurant hosts to be tipped employees); Dole v. Continental Cuisine, Inc., 751 F.Supp. 799 (E.D. Ark. 1990) (finding a maitre d' to be a tipped employee). On the other hand, employees who are cut off from all customer contact have been found to fall outside the definition of tipped employees. See Elkins v. Showcase, Inc., 704 P.2d 977, 989 (Kan. 1985); Myers, 192 F.3d 546.

Certainly Ms. Townsend, when operating the cash register and taking telephone orders, had more than de minimis customer contact. In fact, she concedes that all duties assigned her involved customer service. See Plaintiff's Response to Defendants' Motion for Partial Summary Judgement, p. 2 (admitting for purposes of the motion that front of the house duties all involved customer service). Thus all her positions fell within the definition of "tipped employee" as set out in 203(t). Furthermore, Ms. Townsend does not allege that a tip credit was applied for shifts where she exclusively took phone orders or ran the cash register. Rather, her complaint is limited to shifts where she primarily performed duties as a waitress, but was also called upon to answer phones and check out customers. Such situations are

specifically addressed by the FLSA's implementing regulations. Pursuant to 29 C.F.R. 531.56, a tipped employee's status does not change simply because she is called upon to perform non-tipped duties related to her job. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips. Id. (distinguishing between employees assigned dual jobs, such as a waiter who is also employed as a maintenance man, and employees assigned a single, tipped job which includes incidental duties, such as a waitress who must also toast bread, make coffee, and set tables).

Here, Ms. Townsend, when acting as a waitress, was clearly a tipped employee. Her cash register and phone duties were merely related duties incident to her waitress position. The defendants were entitled to apply a tip credit to the entirety of the plaintiff's waitress shifts, not just those hours spent directly serving tables. Thus, the defendants are entitled to summary judgment in their favor with respect to this issue.

B. Utilization of a "tip pool"

There were occasions when Ms. Townsend was assigned shifts as a hostess at the Boomerang Grill. As hostess, Ms. Townsend received $2.16 per hour plus a share of the "tip pool." The tip pool consisted of a percentage of the tips received by the wait staff for that particular shift. In her deposition, Ms. Townsend testified that "a lot of the time" she would be denied her share of the tip pool by the wait staff and would, as a result, earn less than the minimum wage. She further contends that despite these reported shortfalls, the Boomerang Grill's management instructed her to report that she had in fact earned tips sufficient to meet the hourly minimum wage.

The defendants defend the plaintiff's allegations on the ground that her tax returns indicate that her earnings exceeded the minimum wage. At most, however, the tax documents suggest that over duration of her employment, her wages averaged in excess of $5.15 per hour. The defendants have proffered no authority for the

proposition that an employer can deny an employee minimum wage for certain shifts or workweeks so long as the difference is made up over the course of the tax year. Indeed, similar arguments have been rejected. See Marshall v. Sam Dell's Dodge Corp., 451 F.Supp. 294 (N.D. N.Y. 1978) (finding that for purposes of determining whether an employer has violated minimum wage requirements of the FLSA, the workweek is ordinarily the relevant pay period); Rogers v. Savings First Mortgage, LLC, 362 F.Supp.2d 624 (D. MD. 2005). Because there exist questions of disputed fact with regard to whether Ms. Townsend was paid less than minimum wage when working as a hostess at the Boomerang Gill, summary judgment on that issue must be denied.

III.  State Wage Laws

Finally, Ms. Townsend alleges that the defendants violated Oklahoma wage laws by making deductions from her paycheck for cash register shortages and for the checks of patrons who failed to pay for their meals or whose meals were covered by the restaurant.  In particular, the plaintiff contends that the Boomerang Grill violated section 380:30-1-7 of the Oklahoma Administrative Code, one of the regulations enacted to implement the provisions of 40 Okla. Stat. §§ 165.1-165.11.  The regulation prohibits employers from making deductions from employees' wages except as set forth therein.  In pertinent part, the regulation states:

> (d) It is permissible for an employer and employee to voluntarily enter into a payroll deduction agreement, including deductions for the following purposes:
> ...
>
> (5) To compensate the employer for breakage or loss of merchandise, inventory shortage, or cash shortage caused by the employee; where the employee was the sole party responsible for the cash or items damaged or lost, at the time the damage or loss occurred."

Ms. Townsend contends that the Boomerang Grill made deductions from her wages for losses she did not cause and which were incurred when she was not the "sole party responsible for the cash or items damaged or lost, at the time the damage or loss occurred." Because the nature of the plaintiff's wage deductions present material issues of disputed fact, summary judgment on her state law wage claim is inappropriate and the defendants' motion, with regard to that claim must be denied.

Conclusion

Based upon the foregoing, the Court concludes that, to the extent it seeks a finding that the defendants did not constitute an integrated enterprise or single employer, the defendants' motion for summary judgment should be, and hereby is, **DENIED**. The Court further **DENIES** the defendants' motion as it relates to Ms. Townsend's Title VII claims for hostile work environment sexual harassment and retaliation. In addition, the Court **DENIES** the defendants' motion for summary judgment on Ms. Townsend's claims that the defendants violated the FLSA's tip pool provision and Oklahoma's wage laws. The Court finds that defendants' motion for summary judgment should be **GRANTED** with regard to Ms. Townsend's claim that they violated the FLSA by applying a tip credit to portions of her waitress shifts spent working the cash register and taking telephone orders.

ENTERED this 7th day of November, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

04-1162p016 (pub).wpd